IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **CORA WIGGINS,** | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | |
| | ) | Magistrate Judge |
| **COAST PROFESSIONAL INC.,** | ) | |
| | ) | **JURY DEMAND** |
| Defendant. | ) | |

## COMPLAINT

**NOW INTO COURT**, though undersigned counsel, comes Plaintiff, CORA WIGGINS, complaining of the Defendant COAST PROFESSIONAL INC., states as follows:

### JURISDICTION

1. This action is brought pursuant to The Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2601 et seq. Jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. § 1331, 1343.

### PARTIES

2. Plaintiff CORA WIGGINS (hereinafter sometimes referred to as "Plaintiff"), is a citizen of the United States of America and a resident of Ouachita Parish in the State of Louisiana.

3. Defendant COAST PROFESSIONAL INC., (hereinafter sometimes referred to as "Defendant") is a registered Louisiana Corporation and an employer within the meaning within the meaning of the FMLA. Defendant's principal place of business is located in West Monroe, Louisiana. Upon information and belief Defendant employs more than 75 persons at that office.

## FACTS

4. Plaintiff was hired by Defendant in October, 2008.

5. Plaintiff was employed within the Collections Department at the West Monroe Office.

6. Plaintiff was employed as a rehabilitation specialist for the time period.

7. Plaintiff had worked continuously for Defendant at the West Monroe Office for more that twelve (12) months preceding her request for FMLA leave.

8. Plaintiff had worked more than 1250 hours during the twelve (12) month period preceding her request for FMLA leave.

9. Plaintiff was recognized and awarded Employee of the Month on at least one occasion while working for Defendant.

10. On or about December 21, 2011, Plaintiff's son, Brayden, age 4, was hospitalized for seizures. Plaintiff informed Defendant of the situation and her need to be with her son.

11. Defendant never informed Plaintiff of her rights under the FMLA.

12. Plaintiff called in the next morning, as per call in policy, advising that her son had been admitted to the Hospital. Defendant required Plaintiff to have the hospital nurse fax over verification that she was, indeed, at the hospital with her son and an expected discharge date.

13. Plaintiff returned to work after discharge with proper documentation of the hospital stay, but was never given any FMLA paperwork. Plaintiff did however, receive an "occurrence" for not being at work for the days she was absent.

14. On or about August 19, 2012, Plaintiff was taken to EA Conway Hospital in Monroe, Louisiana for shortness of breath and chest pains. Plaintiff was admitted to the ICU observation floor where she stayed for one (1) week. Defendant required Plaintiff's husband to call in each day she was in the hospital. After returning to work Plaintiff was never offered FMLA paperwork, but was given an "occurrence" for missing work.

15. On or about July 2012, Plaintiff's son, Isaac, began having abdominal pains and cramps, requiring Doctor visits. Plaintiff tried to maintain a positive work ethic along with caring for her son.

16. On or about November 2012, Plaintiff's son's symptoms continued to worsen. Plaintiff took her son to several different Doctors and hospitals in an attempt to treat his symptoms, to no avail. However, Plaintiff was written up and given "occurrences" on August 20, 2012 and November 5, and 11, 2012, the dates she missed work attempting to find a solution for her son's medical issues.

17. Plaintiff became overcome with stress attempting to balance her son's health while maintaining her employment with Defendant.

18. Plaintiff was given an attendance write up after explaining to the Human Resources (HR) Director how sick her son had become and that no one could diagnose his medical issues. Plaintiff questioned management about constantly worrying about losing her job and dealing with her son's undiagnosed sickness.

19. Plaintiff was only offered FMLA leave after a newly hired HR employee asked why she had not been offered FMLA in order for her to take care of her son.

20. Plaintiff's ability to exercise her rights under the FMLA were thereby interfered with by Defendant.

21. After being given FMLA paperwork, Plaintiff's son's Doctor completed FMLA documents and assured Plaintiff that these were qualifying events.

22. Plaintiff was required to recertify Doctors excuses every time someone was ill. Plaintiff was required to call in everyday while she was on FMLA leave.

23. Plaintiff continued to care for herself and her young son while trying to comply with the strict regulations set by Defendant.

24. Plaintiff's other son, Brayden, age 5, became ill and required hospitalization for his tonsils and high fever. During said hospitalization, Plaintiff was told by Doctors that her son had Bradycardia and LQT syndrome which required him to see a Pediatric Cardiologist. Plaintiff informed Defendant of this matter.

25. On or about July 2013, Plaintiff's son Isaac was found to have gallstones.

26. On July 29, 2013, Plaintiff's son Brayden underwent surgery to remove his tonsils and adenoids.

27. On August 2, 2013, Plaintiff's son Isaac underwent surgery to remove his gallbladder.

28. On or about the first week of August 2013, Defendant told Plaintiff, that her FMLA leave would run out on August 6, 2013 and that she was required to come back to work or face losing her job, despite the on going medical issues with her family.

29. On August 5, 2013, Plaintiff called Defendant and requested a leave of absence due to both of her young sons being in the hospital.  Said request was denied.  Plaintiff continued to call everyday to inform Defendant that she would not be able to make it to work until the children had been discharged.

30. On August 15, 2013, Plaintiff's employment was terminated by Defendant. Plaintiff was allegedly terminated by Defendant for excessive absence write ups.

31. On August 15, 2013, Plaintiff's son Brayden was discharged from Doctors care.

32. On August, 22, 2013, Plaintiff's other son Isaac was discharged from Doctors care.

33. On August 22, 2013, Plaintiff was admitted to St. Francis for complications related to stress. Plaintiff was discharged on September 5, 2013.

34. On information and belief, Plaintiff's termination was retaliation for taking FMLA leave to care for her sick young children.

35. Such retaliation is in violation of the FMLA.

36. Plaintiff would not have been discharged but for availing herself of the rights guaranteed under the FMLA.

37. Defendant's actions in discharging Plaintiff under such circumstances interfered with, and unduly burdened Plaintiff's exercise of rights guaranteed her under the FMLA.

38. The actions of Defendant caused or contributed to Plaintiff's own hospitalization for complications related to stress.

39. Plaintiff informed defendant of need for leave for all of the above listed medical issues.

### COUNT I
*Retaliation In Violation of FMLA*

40. Plaintiff repeats and realleges paragraphs 1 through 39 above as paragraphs 1 through 39 of Count I, as though fully set forth herein.

41. Defendant applied FMLA time-off taken by Plaintiff as a negative factor against Plaintiff in terminating her employment.

42. Plaintiff was terminated from her 4 ½ year employment because she availed herself of the guarantees and rights of the FMLA.

43. Defendant violated Plaintiff's rights in having her call in everyday while on FMLA leave and having to recertify her Doctors excuses.

44. As a result of Defendant's actions Plaintiff has suffered harm and injury, damage to her good reputation, extreme mental anguish, painful embarrassment among her friends and co-workers, disruption of her personal life, financial injury, lost benefits, lost wages and loss of enjoyment of the ordinary pleasures of everyday life.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

(a) Monetary damages to compensate Plaintiff for all lost salary and benefits fro the time Defendant's improper conduct commenced to the time of the award, plus all accrued interest thereon;

(b) Monetary damages to compensate Plaintiff for all future lost salary and benefits;

(c) Liquidated damages equal to an amount awarded hereunder, pursuant to FMLA § 107(a)(1)(A)(iii); and

    (d)    Reasonable attorney's fees, expert witness fees and costs of litigation and costs of this suit;

## COUNT II
### *Interference with Plaintiff's Substantive Rights Under the FMLA*

45. Plaintiff repeats and realleges paragraphs 1-39 above as paragraphs 1 through 39 of Count II, as though fully set forth herein.

46. Plaintiff was employed by Defendant for more than 4 ½ years.

47. Plaintiff had worked for Defendant more than 1250 hours within the preceding twelve month period.

48. Plaintiff was told by Defendant that many of her and her family's medical issues did not qualify as an event within the FMLA.

49. Plaintiff was not offered FMLA paper work for issues that clearly qualify for FMLA leave.

50. Defendant intentionally interfered and burdened Plaintiff in the exercise of her substantive statutory rights as an eligible employee under FMLA.

51. Plaintiff was required to call in on a daily basis while on FMLA leave and have her Doctors recertify qualifying events weekly.

52. Plaintiff was entitled to FMLA leave and Defendant unlawfully interfered with Plaintiff's exercise of said entitlement.

53. As a result of Defendant's actions Plaintiff has suffered harm and injury, damage to her good reputation, extreme mental anguish, painful

embarrassment among her friends and co-workers, disruption of her personal life, financial injury, lost benefits, last wages, unpaid bonuses, and the loss of enjoyment of the ordinary pleasures of everyday life.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

(a) Monetary damages to compensate Plaintiff for all lost salary and benefits from the time Defendant's improper conduct commenced to the time of the award, plus all accrued interest thereon;

(b) Monetary damages to compensate Plaintiff for all future lost salary and benefits;

(c) Monetary damages to compensate Plaintiff for all lost bonuses.

(d) Liquidated damages equal to an amount awarded hereunder, pursuant to FMLA § 107(a)(1)(A)(iii); and

(e) Reasonable attorney's fees, expert witness fees and costs of litigation and costs of this suit;

Respectfully submitted,

1315 Cypress Street
West Monroe, LA 71291
Telephone: (318) 388-3320
Facsimile: (318) 388-3337


  /s/Duncan M. Jones
DUNCAN M. JONES
La. Bar No. 34935

RICHARD L. FEWELL, JR.
La. Bar No. 18891
*Attorneys for Plaintiff*