**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **CORA WIGGINS** | **CIVIL ACTION NO. 14-0002** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **COAST PROFESSIONAL, INC.** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

This is an employment discrimination and retaliation action brought by Plaintiff Cora Wiggins ("Wiggins") against her former employer, Coast Professional, Inc. ("Coast"), pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA").

Pending before the Court is a Motion for Summary Judgment [Doc. No. 22] filed by Coast. Coast seeks dismissal of all Wiggins' claims. In the alternative, if the Court determines that one or more claims should proceed to trial, Coast moves the Court for a determination as a matter of law that Wiggins is not entitled to attorney's fees. Wiggins has filed a "Memorandum in Opposition to Defendant's Motion for Summary Judgment or in the Alternative Motion to Reserve Plaintiff's Rights to Her Wage Claim" [Doc. No. 29], in which she not only opposes Coast's Motion for Summary Judgment, but raises a wage payment claim for the first time. Coast has since filed a reply memorandum [Doc. No. 33] in support of its Motion for Summary Judgment and in opposition to allowing Wiggins to amend her Complaint to add a wage payment claim.

For the following reasons, Coast's Motion for Summary Judgment is GRANTED, and Wiggins' FMLA claims are DISMISSED WITH PREJUDICE. Wiggins' motion to reserve a wage claim, which the Court construes as a motion to amend her Complaint, is DENIED. Coast may file

the appropriate pleadings if its wishes to obtain attorney's fees and/or costs.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Coast is a private business engaged in the collection of student loans.[1] Wiggins began her employment with Coast in 2008 as a collector.[2] She was employed as a rehabilitation specialist in the Collections Department at the time of her termination.

Coast provided employees who had less than five years of service with ten days of paid time off ("PTO"), in addition to holiday and floating holidays. Unscheduled absences were listed as "occurrences." Additionally, if an employee scheduled an absence, but had no PTO available, the absence would be listed as an "occurrence." Under Coast's attendance policy, an employee would be terminated if he or she accrued six occurrences in a ninety-day period. Each occurrence remained on an employee's record for ninety days, but expired at the end of the ninety-day period and would not longer be considered. Absences protected by the FMLA were not subject to this policy.

On December 21, 2011, Wiggins left work after her adult daughter brought Wiggins' son, B.R., to the emergency room. B.R. had a fever and had suffered an apparent seizure. He was diagnosed with febrile illness and admitted to the hospital. Wiggins was given an occurrence for leaving work, which expired on March 20, 2012. Wiggins notified Coast of the situation by calling the morning after her son was admitted to the hospital. At Coast's request, a nurse faxed verification of her son's hospital stay and expected discharge date. Wiggins remained at the hospital with her

---

[1] *See* http://coastprofessional.newbusinesspages.com/, last visited 02/04/2015.

[2] Coast asserts that Wiggins did not meet the minimum qualifications for this position of having a high school diploma or G.E.D. and that she misstated on her application that she had graduated from Ouachita High School in 1991. [Doc. No. 22-2, p. 1]. She admitted in her deposition that she did not graduate. However, given the Court's conclusions in this Ruling, it is unnecessary to address this issue.

son and was absent from work for three days, through December 23, 2011. She did not receive any additional occurrences.

Wiggins admits that she received all time off requested in 2011. However, she was not notified of her FMLA rights, and her time off with her son was not designated as FMLA leave.

From August 19-21, 2012, Wiggins was hospitalized for shortness of breath, chest pain, and constipation. She returned to the hospital on August 24, 2012, for anxiety. In total, she was absent from work from August 20-24, 2012. She received one occurrence for failing to report to work, but did not receive any additional occurrences for her time off. This occurrence expired on November 22, 2012.

In November, 2012, Wiggins also took time off to care for her other son, I.M. On November 5, 2012, Plaintiff called into work, notifying Coast that she was taking I.M. to the doctor for abdominal pain. She received one occurrence for this unscheduled absence, which expired on February 3, 2012. On November 13, 2012, Wiggins was absent to take I.M. back to the doctor for abdominal pain. She received one occurrence for this unscheduled absence, which expired on February 11, 2013.

Wiggins admits that she received all time off requested in 2012. However, she was not notified of her FMLA rights, and the time she took off because of her personal illness and to care for her son was not designated as FMLA leave.

On January 9, 2013, Wiggins again called in sick to take I.M. to the doctor. She received one occurrence for this absence, which expired on April 9, 2013. On February 6, 2013, she notified Coast that she was taking I.M. to a doctor's appointment in Shreveport. She received an occurrence for this unscheduled absence, which expired on May 7, 2013. On March 4, 2013, she left work

"sick," according to her personnel record, and received a one-half occurrence. The following day, she called in sick and received one occurrence, which expired on June 3, 2013. Wiggins later testified that her absences on March 4-5, 2013, were to care for her son, I.M., who was again suffering from abdominal pain.

Some time in late February, 2013, Wiggins met with her supervisor, Jaime Jeffrey; Coast's national Director of Human Resources, Michele Malczewski; and Human Resources Generalist, Rochelle Warford about her absences. At the meeting, Wiggins explained the on-going health concerns with her son, I.M.

After the meeting, Coast provided Wiggins with FMLA forms. She returned the completed FMLA certifications, and Coast granted her request for intermittent FMLA leave. She did not receive any further occurrences. However, she was required to provide a doctor's note or updated certification for each absence.

On or about July, 2013, both of Wiggins' sons required hospitalization. B.R. was diagnosed with Bradycardia and LQT syndrome, and I.M. was determined to have gallstones. On July 29, 2013, B.R. underwent surgery to remove his tonsils and adenoids.

On August 2, 2013, I.M. underwent surgery to have his gallbladder removed.

In 2013, Wiggins received twelve weeks or 480 hours of FMLA leave. On or about the first week of August, 2013, Coast informed Wiggins that her FMLA leave would be exhausted by August 6, 2013, and she would be required to return to work. On August 5, 2013, she requested a leave of absence, but her request was denied.

On August 6, 2013, Wiggins was unable to return to work. Once her leave was exhausted, she began receiving occurrences for failure to report to work. She was terminated after she accrued

six occurrences between August 7 and 15, 2013. B.R. was not discharged from a doctor's care until August 15, 2013, and I.M. was not discharged until August 22, 2013. Wiggins was hospitalized on the same day I.M. was discharged for stress-related illness and remained in the hospital until September 5, 2013.

Since her termination, Wiggins has done some babysitting, but has not actively sought employment. Wiggins has applied for social security benefits, contending that her migraine headaches have rendered her completely disabled and unable to work.

On January 2, 2014, Wiggins filed suit in this Court on the basis that Coast violated the FMLA.

On March 3, 2014, Coast filed a Motion to Dismiss for Failure to State a Claim, which Wiggins opposed. After briefing was completed, on April 23, 2014, the Magistrate Judge issued a Report and Recommendation, recommending that the Court deny Coast's motion. On June 18, 2014, after considering the entire record, including the objections and responses to the Report and Recommendation, the Court adopted the Report and Recommendation and denied Coast's motion.

On December 19, 2014, Coast filed the instant Motion for Summary Judgment [Doc. No. 22]. On January 22, 2015, Wiggins filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 29]. On February 9, 2015, Coast filed a Reply Memorandum [Doc. No. 33].

The Court is now prepared to rule on the instant motion.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The movant shows that

> a fact cannot be . . . genuinely disputed by . . . (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

In considering a summary judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant. *LeMaire v. La. Dep't. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

However, if the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B. The FMLA**

The FMLA was enacted, in part, "to balance the demands of the workplace with the needs of families . . . in a manner that accommodates the legitimate interests of employers. . . ." 29 U.S.C. § 2601(b). Section 2612 of the FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for . . . a son . . . of the employee, if such . . . son has a serious health condition" or "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(C)-(D). Following qualified leave, an employee is entitled to reinstatement to

the same or an equivalent position. 29 U.S.C. § 2614(a)(1).

In addition to an eligible employee's substantive rights, the FMLA protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights. *See Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Section 2615 provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Further, an employer is specifically prohibited from discharging, or otherwise discriminating or retaliating against, an employee for exercising rights under the FMLA. 29 U.S.C. § 2615(a)(2). Thus, employers "must grant employees substantive rights guaranteed by the FMLA–and . . . they may not penalize employees for exercising these rights." *Chaffin v. Carter*, 179 F.3d 316, 319 (5th Cir. 1999); *see also Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 348-49 (5th Cir. 2013).

In the present case, Wiggins admits that Coast granted her all the FMLA leave to which she was entitled in 2013 prior to her discharge. However, she alleges in her Complaint that Coast interfered with the use of her FMLA leave and discharged her in retaliation for exercising her FMLA rights. In addition, for the first time in her opposition memorandum, Wiggins asserts a wage payment claim.

**1. Retaliatory Discharge**

Coast moves for summary judgment on Wiggins' retaliatory discharge claim, citing, among other evidence, Wiggins' deposition testimony that she did not believe her termination was the result of retaliation. [Doc. No. 22-1, pp. 17-20]. In Wiggins' opposition memorandum, she concedes that, "based on the evidence and admissions obtained in plaintiff's deposition, there is no viable

argument" to support her belief that she was discharged in retaliation for taking FMLA leave. [Doc. No. 29, pp. 1-2].

Retaliatory discharge claims under the FMLA are treated as disparate treatment claims and, in the absence of direct evidence of retaliatory intent, the familiar *McDonnell-Douglas* burden shifting framework applies to determine whether the employer discharged an employee in retaliation for participating in FMLA-protected activities. *Hunt,* 227 F.3d at 768.

In light of Wiggins' concession and the record evidence, the Court finds that Coast is entitled to summary judgment, and Wiggins' retaliatory discharge claim is DISMISSED WITH PREJUDICE.

**2. Interference**

Wiggins also asserts an interference claim. She contends that Coast interfered with her FMLA rights by failing to inform her of those rights when presented with qualifying events in December, 2011; July, 2012; and August, 2012, and by giving her "occurrences" for missing work during that time because of qualifying FMLA events. During this time, Wiggins claims that she "became overcome with stress attempting to balance both of her son[s]' health while maintaining her employment." [Doc. No. 29, pp. 3-4]. After a Coast human resources employee informed her about her FMLA rights, Wiggins was required to "recertify" doctor's excuses each time one of her sons was ill and to call in to work everyday she was on FMLA leave.

Coast argues that Wiggins has failed to raise a genuine issue of material fact for trial on her interference claim when she has admitted that she received twelve weeks of FMLA leave in 2013, that she received all leave which she requested prior to 2013, that she would not have taken more time off had she received FMLA leave prior to 2013, and that she suffered no monetary damage or prejudice by the alleged failure to designate her pre-2013 absences as FMLA leave.

To prevail on a FMLA interference claim, Wiggins must prove: (1) she was an eligible employee; (2) Coast interfered with her rights under the FMLA; and (3) she was prejudiced by the interference. *Kirk v. Reed Tool Co.*, 247 Fed. App'x. 485, 486 (5th Cir. 2007) (citing 29 U.S.C. §§ 2615, 2617(a)(1)); *see also Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). The term "interference" is not defined in the FMLA. A Department of Labor regulation interpreting the FMLA, however, states that "[i]interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220. Also, an employer's failure to comply with the notice requirements mandated by the FMLA, and its associated regulations, may constitute an interference with, restraint, or denial of an employee's FMLA rights. 29 C.F.R. § 825.300(e). If an employee can establish that the employer's interference caused prejudice, the employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).

In ruling on Coast's Motion to Dismiss, this Court found that Wiggins' Complaint alleges "that she was discharged, at least in part, because of Coast's failure to provide her with FMLA notice and leave in 2012" and, thus, she stated "a plausible claim for interference with FMLA rights." [Doc. No. 12, p. 7, adopted by the Court in Doc. No. 17]. However, it is now clear after completion of discovery that any occurrences Wiggins received for her absences prior to 2013 had long since "expired" and were not the basis of her termination in 2013. Instead, once Wiggins' FMLA leave was exhausted in 2013 and she failed to return to work, she received six occurrences and was

terminated under Coast's general absence policy.

The Court is now left with Wiggins' argument that Coast is somehow liable to her for its conduct with regard to her pre-2013 absences because she was under stress. This argument is insufficient to state a claim for FMLA interference. The Court does not discount that Wiggins suffered stress while trying to tend to her own health and that of her sons and maintaining employment. However, based on her own deposition testimony, Coast's failure to notify her of her FMLA rights did not cause her any prejudice--she was given all leave which she requested prior to 2013, she would not have requested more leave, she did not lose any pay, and, although she did receive occurrences prior to 2013, Coast never took any disciplinary action against her based on those occurrences. Wiggins was denied FMLA leave in a technical sense, but, in reality, she took all of the leave she needed to care for herself and her children both prior to and during 2013.[3] In her own words, she suffered "no harm" because Coast failed to tell her of her FMLA rights. [Doc. No. 22-3, Wiggins Depo., p. 119].

Because Wiggins has failed to demonstrate that she was prejudiced by Coast's alleged interference, Coast's Motion for Summary Judgment is GRANTED on her FMLA interference claim.[4]

---

[3]Although Wiggins noted in her deposition that the leave was unpaid, the FMLA only entitles her to twelve weeks of **unpaid** leave.

[4]Wiggins' opposition memorandum emphasizes the stress she was under because of her attempt to balance the care of her sons with her work, but the FMLA does not provide for emotional distress, nominal, or punitive damages. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 930 (5th Cir.1999) ("We hold that Nero's damages under § 2617(a)(1)(A)(i)(I) are limited to an amount equal to the lost salary or wages, lost employment benefits, or any 'other compensation' that is indicative of a quid pro quo relationship between an employer and an employee. . . [O]ut-of-pocket expenses are in the nature of consequential damages, and § 2617(a)(1) does not provide for recovery of general or consequential damages."); *Nev. Dep't. of Human Res. v. Hibbs*, 538 U.S. 721, 739–40 (2003)

**C. Wage Payment Claim**

Wiggins did not assert a wage payment claim in her Complaint.[5] However, in the opposition memorandum, she argues that the Court should allow her to "reserve" her rights to a wage claim. [Doc. No. 29]. Wiggins asserts as follows:

> Plaintiff worked on a team of collectors for defendant, where she played an instrumental role in achieving the number one ranking for defendant's company with the Department of Education. The Department of Education paid bonuses to the companies whose collections ranked number one in the country among collectors. Plaintiff was entitled to her share of those bonuses . . . The bonuses were earned by plaintiff, for work that was actually performed by plaintiff . . . [Thus, even if] this honorable court decides that plaintiff's claims under FMLA are invalid, Plaintiff should still be afforded the right to pursue the wages, in the form of bonuses, that are still owed to her.

[Doc. No. 29, p. 8]. Wiggins does not cite any authority or even identify whether she is pursuing this wage payment claim under state or federal law.

Coast argues that Wiggins should not be allowed to assert this claim for the first time in her opposition memorandum, outside the deadline for amendment of pleadings set forth in the Court's Scheduling Order. Further, even if the Court were inclined to allow Wiggins to amend her Complaint, Coast argues that such amendment is futile because she has failed to assert facts to support such a claim and her deposition testimony forecloses the possibility.

---

("[T]he cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses."); *Walker v. United Parcel Serv., Inc.,* 240 F.3d 1268, 1278 (10th Cir. 2001) ("Because nominal damages are not included in the FMLA's list of recoverable damages, nor can any of the listed damages be reasonably construed to include nominal damages, Congress must not have intended nominal damages to be recoverable under the FMLA."). Accordingly, even if Wiggins could meet her burden of showing that she was prejudiced by Coast's conduct, she has no recoverable damages for "stress" under the FMLA.

[5] Although Wiggins did seek recovery of lost wages as damages for her FMLA claim, her opposition memorandum clearly raises a new and separate wage payment claim.

Coast explains that the Department of Education gives an incentive award to the collections contractors who reach certain achievements on a quarterly basis. If Coast receives the quarterly incentive award, Coast, in its discretion, gives a portion of the award to its employees as a so-called "CPCS"[6] bonus. Wiggins testified in her deposition that she seeks only her portion of the CPCS bonus which would have been paid after her termination in August, 2013. [Doc. No. 33, Exh. L, Wiggins Depo., p. 53 ("Q. What bonus money do you feel you were owed? A. The CPCS bonus that we get quarterly.")]; [Doc. No. 33, Exh. L, Wiggins Depo., p. 58 ("Q. Now, other than the CPCS bonus from any check that would have come . . . from the DOE at some time after August . . . what other bonus do you believe you were not paid but you were owed by Coast, if any? A. Just my CPCS.")]. However, according to Coast's policies, the CPCS bonus is not earned until the time that it is paid. *See* [Doc. No. 33, Exh. M, Affidavit of Jon Prince, Vice-President of Collections for Coast, and Exhibit 1]. Further, those policies also require an employee to be employed by Coast when the CPCS bonus is paid. *Id.* ("Pursuant to Coast's policy, in order to be eligible for a quarterly bonus, including the CPCS bonus, the employee must be actively employed by Coast at the time the quarterly payment is made to employees."). In this case, Wiggins was terminated on August 15, 2013, but the quarterly CPCS bonus at issue was not received by Coast from the Department of Education until September 4, 2013, and was not remitted to eligible employees until September 6, 2013.

A claim raised in a memorandum in opposition to a motion for summary judgment should be construed as a motion to amend the original complaint under the precedent of the United States Court of Appeals for the Fifth Circuit. *See Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir.

---

[6] Coast does not explain the "CPCS" acronym.

1972); *Debowale v. U.S. Inc.*, 62 F.3d 395, 395 (5th Cir. 1995) ("The district court should have construed [the plaintiff's] . . . claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under FED. R. CIV. P. 15(a) and granted it."). Federal Rule of Civil Procedure 15(a) states that a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). However, the Fifth Circuit has stated that "[a]lthough Rule 15 'evinces a bias in favor of granting leave to amend,' it is not automatic." *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (quoting *Wimm v. Jack Eckerd Corp* ., 3 F.3d 137, 139 (5th Cir. 1993)). Rather, "a decision to grant leave is within the discretion of the trial court, . . . and [i]n deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* at 314-15 (citation omitted).

The Fifth Circuit has stated that "in exercising its discretion to deny leave to amend a complaint, a trial court may properly consider (1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Id.* at 315-16 (affirming district court's refusal to grant leave to amend when the underlying facts were known at the time the original and amended complaints were filed); *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir.1999) (affirming district court's denial of leave to amend filed after defendant's motion for summary judgment and seven months after the original complaint in part because additional claims could have been raised in the original complaint).

Here, Wiggins clearly knew that she had not been paid the CPCS quarterly bonus at the time

she filed this lawsuit almost five months after her termination, yet she neither raised the claim, nor later moved to amend her Complaint to add such a claim. During her deposition, on November 11, 2014, she testified that she was entitled to payment of her CPCS bonus, but she still did not move to amend her Complaint to add a wage claim. Instead, Wiggins now raises this claim for the first time in her opposition to Coast's Motion for Summary Judgment, asking that she be allowed to "reserve" this claim. *See Parish*, 195 F.3d at 764 (noting that courts "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment."). Thus, the Court is presented with a case where Wiggins was aware of the underlying facts at the time the Complaint was filed, but inexplicably failed to assert a wage claim or later amend to add such a claim.

Moreover, even if the delay were somehow justified, the Court must also consider whether such an amendment is futile. *See Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009). Wiggins has not identified the law under which she attempts to proceed, but her wording suggests that she seeks the payment of the CPCS bonus as part of her wages under the Louisiana Wage Payment Act ("LWPA").[7]

Louisiana Revised Statute 23:631(1)(a) provides:

> Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than

---

[7]It is possible that Wiggins is attempting to preserve a claim under the federal Fair Labor Standards Act ("FLSA"), but she has neither cited the FLSA nor worded her claim to suggest that she is pursuing a federal action. *See* 29 C.F.R. § 778.211 (Non-discretionary bonus payments must be included in the regular rate for purposes of computing overtime).

fifteen days following the date of discharge, whichever occurs first.

Additionally, under LA. REV. STAT. 23:634(a), an employee may not be required to sign a contract by which she forfeits her wages if she is "discharged before the contract is completed . . . but . . . [she] shall be entitled to the wages actually earned up to the time of . . . discharge . . . ." These statutes are intended to "assure the prompt payment of wages upon an employee's discharge or resignation." *Beard v. Summit Inst. for Pulmonary Med. and Rehab., Inc.*, 97–1784. p. 3 (La.3/4/98); 707 So.2d 1233, 1236.

Whether a bonus constitutes earned wages (or "amounts then due") under the LWPA is a mixed question of law and fact. *Batiansila v. Advanced Cardiovascular Systems, Inc.*, 952 F.2d 893 (5th Cir. 1992). In *Avila v. Sanofi-Aventis, U.S.*, 90 So.3d 1132 (La. App. 5 Cir. 2012),[8] one of the Louisiana appellate courts faced a similar issue. In *Avila*, the employer's policy provided that if the company achieved its sales objectives, certain employees would be eligible to receive a bonus (called an "ODABP award") in 2008 to be paid out over three years, but that to qualify to receive the bonus in a given year, the employee must, among other requirements, "[b]e employed at the date of payment of each installment to be eligible to receive the payment, . . . [b]e in good standing . . . ,[and] . . . [n]ot be eligible to receive any other long-term incentive plan." *Id.* at 1135. A June 8, 2009 letter which went out to Avila specifically stated that the awards at issue "'partially vest and are paid out over a three-year vesting period.'" *Id.* at 1136. As Avila "did not meet the required qualifications for eligibility at the time of her termination, including continued employment and good standing," the bonus payment for the year of her termination was not "amounts then due" at the time

[8]Coast cites this case as being decided by the Louisiana Supreme Court. That is incorrect. However, the *Avila* case does provide persuasive authority and is consistent with Louisiana case law interpreting the LWPA.

of her termination. *Id.* at 1137; *cf. Mipro v. Lycee Francais de La Nouvelle-Orleans, Inc.*, No. 2013–CA–1604 (La. App. 4 Cir. 2014); 146 So.3d 650, 656 (distinguishing *Avila* because the plaintiff "sought wages, not a bonus, and . . . at the time the bonus was awarded in Avila, the policy of her employer was that certain conditions had to be met for Ms. Avila to receive each installment of her bonus, but said conditions were not met by her at the date of her termination.").

Likewise, in this case, it does not appear that Wiggins can show that the CPCS bonus was amounts then due her when she was terminated. Coast's policies clearly provided that the CPCS bonus was not earned until pay out and that an employee must be employed on the date of pay out to receive the bonus. Wiggins was not employed at the time the CPCS bonus was received by Coast on September 4, 2013; was not employed when it was disbursed to eligible Coast employees on September 6, 2013; and was not even performing work for Coast during at least one month of the quarter upon with the bonus was based.[9] Thus, Wiggins' amendment of her Complaint to pursue a claim under the LWPA would be futile.

Under these circumstances, the Court finds that the purposes of Rule 15 would not be served by allowing Wiggins to amend her Complaint. Wiggins' motion to reserve her rights to a wage claim, construed as a motion to amend her Complaint, is DENIED.

**D. Attorney's Fees and Costs**

---

[9]Even if Wiggins could successfully argue that the CPCS could somehow be "earned" wages despite Coast's policies, Wiggins did not perform any work for Coast after July 22, 2013; she was on FMLA leave until August 6, 2013, and then accrued six further absences prior to her termination on August 15, 2013. Thus, she only performed work during this period for, at most, two of the three months at issue. *Cf. Kaplon v. Rimkus Consulting Group, Inc. of La.,* 39 So.3d 725 (La. App. 4 Cir. 2010 (Where Kaplong had worked the entire 2006 calendar year and the employer had no policy requiring an employee must be employed at the time the annual bonus was paid, the employer violated Louisiana's statutory prohibition against wage forfeiture set forth in La. Rev. Stat. 23:634).

Coast also asserts that it is entitled to attorney's fees and costs in this matter. The Court will consider a motion for attorney's fees and/or bill of costs filed separately.

## III. CONCLUSION

For the foregoing reasons, Coast's Motion for Summary Judgment [Doc. No. 22] is GRANTED, and Wiggins's FMLA claims are DISMISSED WITH PREJUDICE. Wiggins' motion to reserve a wage claim [Doc. No. 29] , which the Court construes as a motion to amend her Complaint, is DENIED. Finally, to the extent that Coast contends that it is entitled to attorney's fees and/or costs, it should make the appropriate filings.

MONROE, LOUISIANA, this 18th day of February, 2015.

Robert G. James

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**